ACCEPTED
06-15-00030-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/19/2015 3:59:40 PM
DEBBIE AUTREY
CLERK

NO. 06-15-00030-CV

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
10/19/2015 3:59:40 PM
DEBBIE AUTREY
Clerk

# IN THE SIXTH DISTRICT COURT OF APPEALS AT TEXARKANA, TEXAS

_____

### LETA YORK

Appellant,

v.

### TODD BOATMAN

Appellee.

_____

ON APPEAL FROM THE 62ND JUDICIAL DISTRICT COURT,
HOPKINS COUNTY, TEXAS
CAUSE NO. CV 41400, THE HONORABLE WILL BIARD, PRESIDING

_____

## APPELLANT'S BRIEF

Phil Smith
Attorney at Law
300 Oak Avenue
Sulphur Springs, Texas 75482

ATTORNEY FOR APPELLANT
October 19, 2015

Appellant's Brief        i        NO. 06-15-00030-CV

## IDENTITY OF PARTIES AND COUNSEL

### Parties to the Underlying Litigation

*Appellant*

*Appellee*

Leta York

Todd Boatman

### Trial and Appellate Counsel

Phil Smith
300 Oak Avenue
Sulphur Springs, Texas 75482
(903) 439-3000
(903) 439-3110 (fax)
psmith300@hotmail.com

Larry A. Powers
200 Jackson Street
PO Box 877
Sulphur Springs, Texas 75483
(903) 885-6506
(903) 885-1199 fax
pb4us@yahoo.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL……………………………..ii

INDEX OF AUTHORITIES…………………...……………………………v

RECORD ON APPEAL……………………….……………… ix

I.     STATEMENT OF THE CASE.………………………………......ix

II.    ISSUES PRESENTED……………………………………………..x

III    STATEMENT OF FACTS.…………………………………………...1

IV.    SUMMARY OF ARGUMENTS……..………………………………5

V.     ARGUMENT POINT 1 –
The trial court erred in giving title to Appellee because the 1995 deed in not a valid gift deed from Appellant to Gwendolyn Boatman, Appellee's mother and predecessor in title…………………………..……………7

VI.    ARGUMENT POINT 2 –
There is no evidence or insufficient evidence to support the trial court's finding of fact No. 3, 4, 5, 6, and 8.………………..………..…30

VII.   ARGUMENT POINT 3 –
If the 1995 deed was a valid deed and there was an agreement to deed the property back, then the deed created a constructive trust in favor of Appellant, and there was not sufficient notice of a repudiation of the trust so as to begin the running of the statute of limitations. ………..…………..31

VIII.  CONCLUSION .………………………………….……………45

IX.    PRAYER…………………………………………………………45

CERTIFICATE OF SERVICE.……………………………………..47

CERTIFICATE OF COMPLIANCE.………………………………47

APPENDIX TO APPELLANT'S BRIEF……………………….……....47

# LIST OF AUTHORITIES

**Page(s)**

Am.Jur. 1978, § 233     36

BLACK'S LAW DICTIONARY 712 (5th ed. 1981)     11

## Statutes

Tex. Bus. & Com. Code Ann. § 26.01 (2002)     13

Texas Family Code § 3.001     8

Texas Family Code § 3.002     8

Tex. Fam. Code Ann. § 5.001     14,15,16

Texas Property Code § 112.001     29

Texas Property Code § 112.0015     29

## Texas Constitution

Tex. Const. art. VII, § 22 (1845)     15

Tex. Const. art. XVI, § 50 interp. commentary (1993)     15

Tex. Const. art. XVI, § 50(b)     15

## Cases

**Texas Cases**

*Akin v. Akin*, 649 S.W.2d 700, 704     20
     (Tex. App.--Fort Worth 1983, writ ref'd n.r.e.)

*Associated Indemnity Corp v. CAT Contracting, Inc.*,     37

918 S.W.2d 580 (Tex.App.-Corpus Christi 1996)

*Benavides v. Benavides*, 218 S.W. 566 (Tex. App. 1920) 22,23,27

*Caddell v. Lufkin Land & Lumber Co.*, 234 S.W. 138 13
 (Tex.App. 1921)

*Christian v. Walker,* 381 S.W.2d 675, 678 12
 (Tex. Civ. App. -- Texarkana 1964, no writ)

*Conner v. Johnson*, 2004 Tex.App. LEXIS 9633 19,22,23,26

*Consolidated Gas & Equipment, Co. v. Thompson,* 36
 405 S.W.2d 333 (Tex. 1966)

*Courseview, Incorporated v. Phillips Petroleum Co.,* 42
 *158 Tex. 397, 312 S.W.2d 197 (Tex. 1957)*

*Crim Truck & Tractor Co. v. Navistar International* 37

*Transportation Corp.,* 823 S.W.2d 591 (Tex. 1962)

*Dorman v. Arnold*, 932 S.W.2d 225, 228 11,19
 (Tex. App.—Texarkana 1996, no writ)

*Dulak v. Dulak*, 513 S.W.2d 205, 209 (Tex. 1974) 21

*Edwards v. Pena*, 38 S.W.3d 191, 197 10,11
 (Tex. App.—Corpus Christi 2001, no pet.)

*Geldard v. Watson*, 214 S.W.3d 202 14
 (Tex.App.-Texarkana 2007)

*Gomer v. Davis*, 419 S.W.3d 470 10
 (Tex.App.-Houston 1st District 2013)

*Green v. Glass*, 2007 Tex.App. LEXIS 8362 Houston 20

*Grimsley v. Grimsley*, 632 S.W.2d at 177 12,20

*Kostelnik v. Roberts*, 680 S.W.2d 532      35,36
    (Tex.App.-Corpus Christi 1984)

*Langford v. Shamburger*, 417 S.W. 2d 438, 445      41,42
    (Tex. Civ. App.--Fort Worth 1967, writ ref'd n.r.e.)

*Little v. Smith*, 943 S.W.2d 414, 425 (Tex. 1997)      39
    (Enoch, J., concurring)

*Lopez v. Lopez,* 271 S.W.3d 780, 788      10
    (Tex. App.—Waco 2008**,** no pet.)

*McAnally v. Texas Co.,* 124 Tex. 196, 204,      26
    76 S.W.2d 997, 1000 (1934)

*McConathy v. McConathy*, 1997 Tex.App. LEXIS 1592 Dallas      20

*Meduna v. Holder* , 2003 Tex. App. LEXIS 10568      12
    (Tex.App.- Austin 2003)

*Miller v. Huebner*, 474 S.W.2d 587 (Tex.Civ.App. --      36
    Houston [14th Dist.] 1971, writ ref'd. n.r.e.)

*Mills v. Gray,* 147 Tex. 33, 210 S.W.2d 985 (Tex. 1948)      36

*Molnari v. Palmer*, 890 S.W.2d 147      21
    (Tex.App.-Texarkana 1994)

*Nipp v. Broumley,* 285 S.W.3d 552, 558      10
    (Tex. App.—Waco 2009, no pet.)

*Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401      44
    (1960)

*Pick v. Bartel*, 659 S.W.2d 636      13
    (Tex 1983)

*Richardson v. Laney*, 911 S.W.2d 489      7,26,34
    (Tex.App.-Texarkana 1995)

*Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963)                21

*Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713                39
    (Tex.App.- Eastland 2002)

*Sorsby v. State*, 624 S.W.2d 227                25
    (Tex.App.-Houston [1st] 1981)

*Soto v. First Gibraltar Bank, FSB San Antonio*,                11,20
    868 S.W.2d 400, 403
    (Tex. App.—San Antonio 1993, writ ref'd)

*Southwest Tex. Pathology Assocs. V. Roosth*, 27 S.W.3d 204                37
    (Tex.App.-San Antonio 2000, pet.dism'd)

*Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502                37
    (Tex. 1980)

*Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 249-50                41
    (Tex. 2002)

*Texas Land Mortgage Co. v. Cohen*,                25
    138 Tex. 464, 159 S.W.2d 859 (1942)

*Thigpen v. Locke,* 363 S.W.2d 247 (Tex. 1962)                36

*Thompson v Dart*, 746 S.W.2d 821                19,22
    (Tex.App.-San Antonio 1988)

*Treuil v. Treuil*, 311 S.W.3d 114                41
    (Tex.App.-Beaumont 2009)

*Troxel v. Bishop,* S.W.3d 290, 297                10,11
    (Tex. App.—Dallas 2006, no pet.)

*Woodworth v. Cortez*, 660 S.W.2d 561, 564                11
    (Tex. App.—San Antonio 1983, writ ref'd n.r.e.)

## RECORD ON APPEAL AND APPENDIX OF EXHIBITS

The record on appeal consists of a one-volume Clerk's Record, a three volume Reporter's Record, with a Master Index as Volume 1 and the trial testimony Transcript as Volume 2. Volume 3 is the trial exhibits. The Clerk's Record will be cited by page number (i.e. "Clerk's file page __"). The Reporter's Record will be cited by page number and line(s) (i.e. RR2, p. 1, lines 2-4).

## STATEMENT OF THE CASE

This is a suit for title to 153.185 acres of land between Appellant York (Appellee's grandmother) and Appellee. The trial was to the court, and the trial court found that title was in the Appellee, and that "appropriate statute of limitations" had cut off all claims for title presented by the Appellant.

# ISSUES PRESENTED

**POINT ONE:** Appellee based his claim to title on his contention that the 1995 deed was a gift to his mother, with no agreement to deed the property back. Therefore, the trial court erred in giving title to Appellee because the 1995 deed in not a valid gift deed from Appellant to Gwendolyn Boatman, Appellee's mother and predecessor in title.

**POINT TWO:** There is no evidence or insufficient evidence to support the trial court's finding of fact No. 3, 4, 5, 6, and 8.

**POINT THREE:** If the 1995 deed was a valid deed and there was an agreement to deed the property back, then the deed created a constructive trust in favor of Appellant, and there was not sufficient notice of a repudiation of the trust so as to begin the running of the statute of limitations.

STATEMENT OF FACTS

This case is a trespass to try title action for title to a 153.185 acre tract of land in Hopkins County, Texas. The trial court granted judgment for the Appellee that he has title to the 153.185 acres of land and that Appellant has an equitable life estate on a 4 acre tract contained within the 153.185 acre tract. The court also found that the applicable statute of limitations barred all of Appellant's claims for title, except for the life estate in the 4 acres (FFCL #3, Clerk's file page 234).

Appellant has lived on the 4 acre tract which contains her house since 1977 (RR2, p. 163, line 25; Exhibit 22, RR3, page 241). The 4 acre tract was purchased by Appellant and her husband from Appellant's parents in 1967 and conveys to Appellant and her husband a life estate with remainder to their only daughter Gwendolyn Boatman, Appellee's mother. (Exhibit 2, RR3, page 149). Appellee is Appellant's grandson. Appellant claims title to the 153.185 acres through a 1985 partition deed between her and her sister that conveys the 153.185 acres to Appellant as her separate property (Exhibit 3, RR3, page 151) and did not except the 4 acre life estate deed. Appellant and her husband had claimed the entire 153.185 acres as their homestead since 1985.

Actually, there are four deeds involved in this case. The first is the 1967 deed for 4 acres purchased by Appellant York and her husband from Appellant's parents. (Exhibit 2, RR3, page 149) The second is the 1985 deed whereby

Appellant and her sister partitioned their parent's land after the parents died intestate (Exhibit 3. RR3, page 151). The third is an August 10, 1995 deed from Appellant to her daughter Gwendolyn Boatman for the 153.185 acres and whose description includes the 4 acres conveyed in the 1967 deed and does not except this deed from the conveyance (Exhibit 4, RR3, page 154). This deed was signed 16 days before Appellant's husband died, and the entire 153.185 acres conveyed was their homestead at the time of his death (FFCL #1, Clerk's file page 233). All of the court's findings of fact claim that this deed was dated August 8, 1995.

The fourth is a 2003 gift deed of the 153.185 acres conveying it from Gwendolyn Boatman back to the Appellant (Exhibit 7, RR3, page 174). This deed was revoked and never delivered (Exhibit 12, RR3, page 189). The trial court found that the 1995 deed was valid and was subject to the life estate in favor of Appellant granted in the 1967 deed and the homestead interest of Appellant's husband Henry A. York, who did not join in the deed (FFCL #1 Clerk's file page 233).

Appellant claimed at trial that she had deeded the 153.185 acres in trust to her daughter in 1995 with an agreement with her daughter that anytime Appellant wanted the property back that her daughter would deed it back to her (RR2, page 168, lines 22-24; p. 172, lines 6-20; p. 174, line 20 to p. 175, line 9; p. 194, line 22 to p. 195, line 20). She claimed that the property was conveyed upon her

daughter's advice and urging at the time of her husband's last illness, whereby her daughter told her that if she did not get the property out of her name that the government would take it to pay for her husband's nursing care (RR2, page 171, lines 19-25). The evidence showed that Appellant relied heavily upon the advice of her daughter and that a very close relationship existed between the two. Even the Appellee admitted this at trial (RR2, page 43, line 4 to p. 44, line 17; p. 173, line 25 to p. 174, line 19; p. 230, lines 6-14).

Appellee claimed at trial, however, that the 1995 deed was a gift deed from Appellant to her daughter, Gwendolyn Boatman, and that there was never any agreement to deed the property back (RR2, p. 239, lines 11-16). When asked at trial whether there was an agreement for his mother to deed the property back to Appellant, he testified, "Never. Never was there for her to deed the property back." (RR2, page 239, lines 11-16). Appellee therefore claims title to the property on the basis of a gift of the property to his mother, and that the property became his mother's sole and separate property by gift from the time of the 1995 deed, and that he now owns full title as the only devisee of Gwendolyn Boatman's will (FFCL #9, Clerk's file page 233-234).

The Court did make a finding of fact that Gwendolyn Boatman did inform her mother that she was claiming ownership of the 153.185 acres of land shortly after the death of her husband by reason of the August 8, 1995 deed (FFCL #4,

Clerk's file page 233). Appellant did admit in a deposition that she had asked for her property back soon after her husband died in 1995 and that her daughter had refused (Exhibit 21, RR3, page 231-232). However, Appellant explained in testimony that her daughter had never actually told her that she would never give it back, but that her daughter just kept putting it off, telling her that she would do it later (RR2, p. 174, line 20 to p. 175, line 9; p. 194, line 22 to p. 195, line 20). The evidence did show that her daughter did make plans to give the property back when she executed a gift deed back to her mother. A copy of the gift deed from Gwendolyn Boatman back to Appellant in 2003 is located at Exhibit 7, RR3, page 174. Gwendolyn decided not to record this deed however, and later revoked it (Ex. 12, RR3, page 189). The Court made another finding of fact which stated that in 2004 and 2005 that Gwendolyn Boatman informed the Appellant that she claimed ownership of the 153.185 acres of land by reason of the August 8, 1995 deed (FFCL #8, Clerk's file page 234). Appellant testified many times that Gwendolyn never did fully refuse to give her the property back and just kept putting her off about it (RR2, p. 168, lines 22-24; p. 170, lines 7-18; p. 172, lines 6-20; p. 174, line 20 to p. 175, line 9;).

The pleadings of Appellant York placed the title in question in this lawsuit. Appellee's only active pleadings were his First Amended Original Answer and Supplemental pleading for reimbursement. No counterclaim for title was filed by

Appellee, and the only defenses pled by him in his answer were (1) statute of limitations, (2) estoppel, (3) waiver, (4) laches, and (5) res judicata. Appellee has no pleadings for adverse possession.

## SUMMARY OF THE ARGUMENT

The evidence clearly shows that Appellee maintains that the property was the separate property of his mother, Gwendolyn Boatman and that she received the conveyance from her mother as a gift with no strings attached. Appellee must therefore show that Appellant made a valid gift to his mother. Tracking the elements of a valid gift, the Appellant will show that there was no valid gift and therefore no valid delivery of the property in the first place. In the 1995 deed from Appellant to Gwendolyn Boatman, there was no valid description of a present interest conveyed because the description did not exclude the life estate in the 4 acres and did not exclude the homestead interest of Appellant's husband which Appellant could not convey. Also there is no evidence of any donative intent on the part of Appellant because Appellant testified that she only deeded the property to protect it from the government. Also, in the deed there was no passing of an immediate interest in the property because the life estate of the 4 acres and Appellant's husband's homestead interest did not immediately pass. Also, there was no immediate change of possession of the property because Appellant and her husband continued to live on the property, and the evidence will show that

Gwendolyn Boatman did not change the tax rolls into her name until 9 or 10 years after the alleged gift was made. Also the Appellant continued to live in the house, keep her cattle on the property, and collected the rents from a rent house on the property. Further, there was no evidence of immediate acceptance of the property by Gwendolyn Boatman for the same reasons. The evidence shows that Gwendolyn Boatman did not immediately take dominion and control of the entire property described in the gift, and the elements of a valid gift do not exist and the conveyance amounts to an attempt to give a gift in the future. Therefore there was no valid gift and there can be no running of the statute of limitation, except title by adverse possession.

Second, several of the findings of fact and conclusions of law by the trial court incorrectly state that title began to run from August 8, 1995. The date of the deed is August 10, 1995 and therefore all of these findings of fact are not supported by the evidence.

Third, if there was a valid deed and transfer of possession of the property, the conveyance was made in trust for the benefit of Appellant, with Gwendolyn Boatman having a fiduciary relationship with her mother, the Appellant. Because of this fiduciary relationship, no proper notice of repudiation of the trust agreement was ever communicated clearly enough to Appellant so as to begin the running of the statute of limitations for repudiation of a trust. Therefore, any trust relationship

ceased to exist with the death of Gwendolyn Boatman, and the trust deed should be set aside.

## ARGUMENT

**POINT ONE:** **Appellee based his claim to title on his contention that the 1995 deed was a gift to his mother, with no agreement to deed the property back. Therefore, the trial court erred in giving title to Appellee because the 1995 deed in not a valid gift deed from Appellant to Gwendolyn Boatman, Appellee's mother and predecessor in title.**

The Appellee totally stakes his claim to title on his contention that the 1995 deed is a valid gift deed. Appellant would show that the 1995 deed is not a valid gift deed and is therefore void.

The trial court made the following finding of fact: "On August 8, 1995, Plaintiff (Appellant) conveyed 153.185 acres of land by general warranty deed to her daughter, Gwendolyn Boatman. The conveyance was subject to the homestead interest of Henry A. York who did not join in the deed. The conveyance did not contain any exceptions or reservations of title." (Clerk's file p. 233)

The deed itself calls for consideration (Exhibit 4, RR3, page 154), but none ever passed, and Appellee asserts that Gwendolyn Boatman and Appellee have always claimed this property to be Gwendolyn Boatman's separate property since August 10, 1995. In _Richardson v. Laney_, 911 S.W.2d 489 (Tex.App.-Texarkana

1995), this court states, "When property is deeded from a parent to a child or children, it is presumed that a gift was intended. This presumption is rebuttable, but the person seeking to rebut the presumption must prove a lack of donative intent by clear and convincing evidence at the trial court level."

In 1995, Ms. Boatman was married to Gene Boatman and had a community property home that she jointly owned with him (RR2 p. 226, lines 22-24). Gwendolyn Boatman and Gene Boatman were never divorced and were married at the time of the 1995 deed and at her death (RR2 p.23, lines 7-14). Separate property is property acquired during the marriage either by gift or inheritance (Texas Family Code § 3.001). Any property that is acquired during the marriage that is not separate property is community property (Texas Family Code § 3.002). If the 153.185 acres was not acquired by gift, then it would be community property.

Gwendolyn Boatman acquired this property during the marriage by deed, not by inheritance. Appellee relies on the following facts to show that the property was his mother's separate property. The 1995 deed states that it is her separate property (Exhibit 4, RR3, page 154). During his mother's divorce proceeding, which was never completed, she claimed it as separate property (Exhibits 6, 11, 14 RR3, pages 159, 188, 197). The unrecorded 2003 gift deed states that the property is her separate property (Exhibit 7 RR3, page 174). Therefore Gwendolyn

Boatman admits that she did not purchase the property because all property purchased during the marriage is presumed to be community property. Therefore, the property had to be acquired by gift. If not, it is community property and her husband Gene Boatman still owns his community one-half.

Also, Appellant York makes no mention of any money being paid for the deed, and states that the only reason for the deed was to protect the land from the government (RR2 p. 171 line 17 to p. 172 line 5; p. 168 lines 22-24). Witness Gene Boatman testified that he was in the room with both Appellant and his wife Gwendolyn Boatman when Appellant York talked about putting the property in Gwendolyn's name, and that the deed was given because Gwendolyn Boatman told her mother that she could lose the land if she didn't get it out of her name and that Gwendolyn would deed the property back to Appellant York anytime that Appellant wanted it back (RR2, p. 36, lines 6-17).

Appellee Boatman testified that he acquired full title to the property by inheritance because he was the only devisee of his mother Gwendolyn's will (Exhibit 17, RR3, page 200, 202). He testified that he did not have to ask Appellant York for permission to build his barn/house or make changes to the property because he owned the property outright with no rights at all by Appellant. This means that Appellee Boatman is claiming that his mother Gwendolyn was

claiming full title as her separate property, and not merely a one-half interest in the property had it been community property.

**Gift of realty law shows no valid gift**

The law on gift of realty is clear. There must be a valid deed; there must be donative intent of a present interest; there must be valid delivery of the property; and valid acceptance. The case of _Gomer v. Davis_, 419 S.W.3d 470 (Tex.App.-Houston 1st District 2013) clearly states the law of gift:

"A gift is a voluntary transfer of property to another made gratuitously and without consideration. _Lopez v. Lopez_, 271 S.W.3d 780, 788 (Tex. App.—Waco 2008, no pet.). To establish the existence of a valid inter vivos gift, the Appellant must show (1) that the donor intended to make a gift; (2) delivery of the property; and (3) acceptance of the property by the donee. _Nipp v. Broumley_, 285 S.W.3d 552, 558 (Tex. App.—Waco 2009, no pet.); _Edwards v. Pena_, 38 S.W.3d 191, 197 (Tex. App.—Corpus Christi 2001, no pet.). The Appellant establishes the requisite donative intent by, among other things, "evidence that the donor intended an **immediate and unconditional** divestiture of his or her ownership interests and an immediate and unconditional vesting of such interests in the donee." _Nipp_, 285 S.W.3d at 559 (emphasis in original); _Troxel v. Bishop_, 201 S.W.3d 290, 297 (Tex. App.—Dallas 2006, no pet.)

"[T]o be a gift in <u>praesenti</u> [at the present time], the donor must, at the time he makes it, intend an immediate divestiture of the rights of ownership out of himself and a consequent immediate vesting of such rights in the donee."   Until the donor has absolutely and irrevocably divested herself of the title, dominion, and control of the subject of the gift, she has the power to revoke the gift. *Edwards*, 38 S.W.3d at 197; see also *Troxel*, 201 S.W.3d at 296 ("All dominion and control over the property must be released by the owner."). The donee does not have ownership of the subject of the gift until complete ownership has been transferred from the donor to the donee. *Edwards*, 38 S.W.3d at 197. An inter vivos gift must be absolute and not open for future reconsideration. *Soto v. First Gibraltar Bank, FSB San Antonio*, 868 S.W.2d 400, 403 (Tex. App.—San Antonio 1993, writ ref'd); see also *Dorman v. Arnold*, 932 S.W.2d 225, 228 (Tex. App.—Texarkana 1996, no writ) (holding that, as matter of law, Appellant did not show present donative intent because donor intended for property to remain his until his death); *Woodworth v. Cortez*, 660 S.W.2d 561, 564 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) ("A gift may generally not be made to take effect in the future since a mere promise to give is unenforceable without consideration.")".

*"In praesenti" means at the present time; it is used in opposition to in futuro. BLACK'S LAW DICTIONARY 712 (5th ed. 1981). Thus, to be a gift in praesenti, the donor must, at the time he makes it, intend an immediate divestiture of the*

*rights of ownership out of himself and a consequent immediate vesting of such*

*rights in the donee. <u>Christian v. Walker</u>, 381 S.W.2d 675, 678 (Tex. Civ. App. --*

*Texarkana 1964, no writ).*

In <u>*Grimsley v. Grimsley*</u>, 632 S.W.2d at 177, *the court states,*

> *"The three elements which constitute a gift are (1) donative intent, (2) delivery of*
>
> *the property, and (3) acceptance of the property. All dominion and control over*
>
> *the property must be released by the owner. Id. Appellant, the one claiming the*
>
> *gift, has the burden of establishing these elements. Id."*

**The 1995 deed is not a valid gift deed.**

So, as to the elements of a gift, there first must be a valid deed. The 1995

deed has technical problems which make it void as a valid present gift because the

deed description in this deed does not correctly describe the interest conveyed.

The deed does not except the 4 acre 1967 deed owned by Appellant York and her

husband from the land described. It also does not except the homestead interest of

Appellant's husband. The trial court's findings of fact and conclusions of law

specifically say that the 1995 deed was subject to these two interests (Clerk's file

page 233-234).

A valid deed must have a clear description of property to be conveyed in the

deed. If the deed description of the interest sought to be conveyed is unclear, the

deed is void. <u>*Meduna v. Holder*</u> , 2003 Tex. App. LEXIS 10568 (Tex.App.- Austin

2003)  "Where a <u>deed</u> purports to convey land, but describes the tract only by quantity and as being part of a larger parcel, with nothing to identify what specific portion of the larger parcel is intended to be conveyed, the <u>deed</u> is void for uncertainty of <u>description</u>.  *The statute of frauds requires that all conveyances of real property be in writing and signed by the party to be charged.* <u>*Tex. Bus. & Com. Code Ann.*</u> *§ 26.01 (2002). Furthermore, to satisfy the statute of frauds the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty.*

<u>*Pick v. Bartel*</u>, 659 S.W.2d 636 (Tex 1983)  "*It is well settled that in order for a conveyance or contract of sale to meet the requirements of the Statute of Frauds, it must, insofar as the property description is concerned, furnish within itself or by reference to other identified writings then in existence, the means or data by which the particular land to be conveyed may be identified with specific certainty*".

<u>*Caddell v. Lufkin Land & Lumber Co*</u>., 234 S.W. 138 (Tex.App. 1921) "Men are presumed to be able among themselves to make *deeds* expressive of their intentions, and, if they fail to do so, or to furnish the means by which their intention can be determined, it would be a usurpation of authority for courts to undertake to make *deeds* for them.  The intention of the makers of the instrument,

as gathered from the instrument as a whole, in the light of extrinsic circumstances consistent with what is there expressed, must control."

Appellee Boatman admits that the 1995 deed description is not correct because it does not exclude the 4 acre 1967 deed property, even though Exhibit 22 shows that the 4 acre tract is included within the 153.185 acre description. Appellee Boatman testified that his mother told him that Appellant York had the 4 acres for life. Therefore, Appellee Boatman's admission proves that the description in the 1995 deed is not correct. It does not except the outstanding 4 acres life estate owned by Appellant and her husband Henry A. York. Furthermore, the trial court's finding of fact and conclusion of law awards Appellant a 4 acre life estate on the basis of equitable relief because the deed did not contain any exceptions or reservations of title for the 4 acre 1967 deed (Clerk's file page 233-234).

Also, a valid deed also must not violate the homestead laws of the State of Texas. Section 5.001 of the Texas Family Code states, "Whether the homestead is the separate property of either spouse or community property, neither spouse may sell, convey, or encumber the homestead without the joinder of the other spouse except as provided in this chapter or by other rules of law." The trial court's finding of facts clearly states that at the time of the 1995 deed, "the conveyance

was also subject to the homestead interest of Henry A. York who did not join in the deed. (FFCL #1)

For homestead property, both husband and wife must sign. If one spouse does not sign, the deed is not for a full present interest in the property and full title is not immediately effective. The case of *Geldard v. Watson*, 214 S.W.3d 202 (Tex.App.-Texarkana 2007) states:

"A spouse's homestead right in Texas predates statehood. Tex. Const. art. XVI, § 50 interp. commentary (1993). Spousal homestead rights have been constitutionally guaranteed since the first constitution of the State of Texas. Tex. Const. art. VII, § 22 (1845). The constitution currently provides that an owner or claimant of the property claimed as homestead may not sell or abandon the homestead without the consent of each owner and the spouse of each owner, given in such manner as may be prescribed by law. Tex. Const. art. XVI, § 50(b). The Texas Family Code makes it clear that the requirement of the joining of both spouses to a conveyance of the homestead is mandatory, irrespective of the community or separate property nature of the realty constituting that homestead. Tex. Fam. Code Ann. § 5.001 (2006). Whether the homestead is the separate property of either spouse or community property, neither spouse may sell, convey, or encumber the homestead without the joinder of the other spouse except as provided in Tex.

<u>Fam. Code Ann</u>. ch. 5 or by other rules of law. <u>Tex. Fam. Code Ann.</u> § 5.001.

"The signature of one spouse to a lien on or a conveyance of the homestead, even if separate property, may not act to the detriment of a non-signing spouse who would benefit from the homestead right. One spouse's conveyance of her separate property family homestead, without the joinder of the other spouse, is not void as to the conveying spouse. It is, however, inoperative against the continuing homestead claim of the non-joining spouse. A conveyance by a husband, not joined by his wife, of the homestead property, is merely inoperative while the property continues to be a homestead, or until such time as the homestead may be abandoned, or the deed ratified in accordance with law.

"Ratification of the conveyance of the homestead by the non-joining spouse requires a formal recognition of the conveyance through execution of an instrument.

"The homestead right constitutes an estate in land. This estate is analogous to a life tenancy, with the holder of the homestead right possessing the rights similar to those of a life tenant for so long as the property retains its homestead character. The homestead estate is a vested

interest. **The homestead estate has the effect of reducing the underlying ownership rights to something akin to remainder interests."**

The 1995 deed to the entire 153.185 acre tract does not exclude the 4 acre tract that was purchased during the marriage of Appellant and her husband in its description of the land conveyed. It also does not exclude the homestead interest of Henry A. York and the property was subject to the homestead right of Henry York. It is a violation of Henry York's homestead rights in the 153.185 acres that the 1995 deed did not provide that his homestead rights were protected. The deed is absolutely void as to Henry York's interest since he was still alive and did not join in the deed. Therefore, part of the interest described in the 153.185 deed's description of the property conveyed could not be presently conveyed and is incorrect and defective. The deed also did not convey a full present possessory interest of all the property described in the deed at the time of its execution on August 10, 1995 because Henry York's homestead interest could not be conveyed by his wife before his death and the life estate of the 4 acres was still in effect. Because Appellant's husband was alive, the only interest that could have been conveyed to Gwendolyn Boatman by the 1995 deed was "something akin to a remainder interest", not a full possessory interest. Appellant is also still alive today.

**The 1995 Deed Attempts a Gift of a Future Interest**

Also, there is a distinction between this case and the Geldard case. The Geldard case did not address the issue of the validity of a gift deed. The non-signing spouse did not question the validity of the deed, but only questioned the enforcement of the warranty right against the non-signing spouse. This case involves an alleged gift deed. If this were a contract situation, it would be true that the deed signed by the signing spouse could become operative against the signing spouse by contractual enforcement or estoppel. However, a donee cannot force the donor to complete a gift that was never completed. There is no contractual right to enforce a gift and the donor may revoke an uncompleted gift at any time. Here the gift was not completed at the time the deed was given, and the alleged gift deed is therefore void. The 1995 deed amounts to an attempt to give a gift of a future interest.

**Donative Intent of a Present Interest**

Second, the evidence shows that there was no intent by Appellant York to make an immediate divestiture of her rights of ownership and a consequent immediate vesting of such rights in Gwendolyn Boatman. The evidence is uncontroverted that the life estate of Appellant and her husband Henry and their present possession of the 4 acres did not immediately vest in Gwendolyn Boatman. The evidence is also uncontroverted that Henry York's homestead interest in the

entire 153.185 acres did not immediately vest in Gwendolyn Boatman. Also, Appellant never released dominion and control over any of the property. Her testimony and these uncontroverted facts that she never released immediate dominion and control over the property is clear and convincing evidence that she never had the donative intent to make a present gift. Because of the homestead violation and outstanding life estate in the 4 acres, the 1995 deed amounted to an attempt at a gift of a future interest.

In order for a gift deed to be valid, the donor must possess at the time of the execution of the deed a donative intent of a present interest. The donor must, at the time he makes the gift, intend an immediate divestiture of the rights of ownership out of himself and a consequent immediate vesting of such rights in the donee. All dominion and control over the property must be released by the owner. _Thompson v Dart_, 746 S.W.2d 821 (Tex.App.-San Antonio 1988); _Conner v. Johnson_, 2004 Tex.App. LEXIS 9633.

The Intent of the donor is the principal issue in determining whether a gift was made. _Dorman v. Arnold_, 932 S.W.2d 225 (Tex.App.-Texarkana 1996). In the Dorman case the evidence showed that the owner intended for the property to remain his until his death. Ownership was clearly retained, and the Court stated that, as a matter of law, present donative intent was not shown.

A gift of a future interest cannot complete a gift.  It must be an immediate divestiture of the rights of ownership.  A gift may not be made to take effect in the future.  *McConathy v. McConathy*, 1997 Tex.App. LEXIS 1592 Dallas; Green v. Glass, 2007 Tex.App. LEXIS 8362 Houston.  *Soto v. First Gibraltar Bank, FSB*, 868 S.W.2d 400 (Tex.App.-San Antonio 1993)  "An inter vivos gift must be absolute, not open for future reconsideration. Akin v. Akin, 649 S.W.2d 700, 704 (Tex. App.--Fort Worth 1983, writ ref'd n.r.e.). The donor must give up dominion and control over the property.  *Grimsley v. Grimsley*, 632 S.W.2d 174, 177-78 (Tex.App.-Corpus Christi 1982 writ ref'd)

There is other evidence that shows that Appellant did not have a donative intent to make a present gift.  The handwritten statements and deeds signed by Gwendolyn Boatman corroborate the fact that Gwendolyn knew that the property should go back to her mother Appellant York.   The Exhibit 7 (RR3, page 174) gift deed from Gwendolyn to her mother shows that she intended to give the property back to her mother.  The Exhibit Q97 (RR3, page 127) on 10-14-03 states, "I'm concerned about transferring the Deed on Big daddy's land back to her.  I've placed a call to my atty to ask him but wasn't able to talk to him.  Sec'y was going to find out."  The Exhibit Q98 (RR3, page 128)  on 10-15-03 says, "Still worrying about the Deed transfer."  The Exhibit Q99 (RR3, page 129) on 10-16-03 says, "Still no word on deed transfer.  This afternoon I called atty's office again.  The

sec'y called back later and said that J. said, "Leave it alone. He can't touch it. Can do more harm than good by changing it." The Exhibit Q1 (RR3, page 29) and Exhibit P 4 (RR3, page 240) note in Gwendolyn's handwriting shows that the intent to transfer the property was not a gift. It was to protect the property from foreclosure by the nursing home. The handwritten note of Gwendolyn states, "Deed over to Gwendolyn and maintain life estate on house and 1 acre. Leta can live on it as long as Leta lives. Can have a tax freeze. Johnny Ramey said not do this because nursing home can take an amt to maintain living there for their part of money." The Exhibit 11 (RR3, page 188) (letter from Gwendolyn Boatman to Jay Garrett) states, "I wanted the land to go back to my mother."

### Exertion of Undue Influence on Donative Intent

There is some evidence that Gwendolyn Boatman used undue influence on Appellant York during a critical time of illness of her husband just before he died to scare her into putting the property into Gwendolyn's name. In the case of *Molnari v. Palmer*, 890 S.W.2d 147 (Tex.App.-Texarkana 1994) the Court stated, "In deciding whether there was undue influence in executing a deed, the court considers three factors: (1) the existence and exertion of an influence; (2) whether the influence operated to subvert or overpower the grantors' minds when they executed the deed; and (3) whether the grantors would not have executed the deed but for the influence. *Dulak v. Dulak*, 513 S.W.2d 205, 209 (Tex. 1974); *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963)."

While there may not be enough evidence to prove undue influence, there is certainly evidence that Appellant York was under stress at the time that the deed was executed and that her daughter Gwendolyn Boatman was applying pressure for Appellant to get the property out of her name in order to protect it from the government to satisfy nursing home costs. This evidence should go to the issue of whether or not the Appellant had a donative intent to make a present gift of her property to her daughter Gwendolyn Boatman, and considering the influence used, the fiduciary relationship between Appellant and her daughter, and the above arguments, there clearly was no donative intent to make a present gift.

### Must be a valid delivery

Third, for a valid gift of conveyance of land, there must be a **present interest** validly conveyed, and the act of **delivery and acceptance must be mutual and concurrent**. A completed delivery of a gift has two elements: (1) The instrument must be placed within the control of the grantee, and (2) It must be done by the grantor with the intention that it shall become immediately operative as a conveyance. _Benavides v. Benavides_, 218 S.W. 566 (Tex. App. 1920) The donor must, at the time he makes it, intend an immediate divestiture of the rights of ownership out of himself and a consequent immediate vesting of such rights in the donee. _Thompson v Dart_, 746 S.W.2d 821 (Tex.App.-San Antonio 1988); _Conner v. Johnson_, 2004 Tex.App. LEXIS 9633.

As earlier stated, to show donative intent, one must show that the donor **has relinquished all dominion and control** over the property. *Conner v. Johnson*, 2004 Tex.App. LEXIS 9633. In *Benavides v. Benavides*, 218 S.W. 566 (Tex. App. 1920), the Court stated,

> "To operate as a transfer of title to land, there must be a delivery of the deed, and every act in connection therewith fails unless such delivery is made. And the delivery must be made with the intention that it shall take effect as a conveyance, and is usually a question of fact and cannot in most cases be declared as a matter of law. The fact that a deed is found in the possession of a grantee will raise the presumption that it was delivered to and accepted by him, but the presumption, like any other, may be rebutted, and where the land after the date of the deed was assessed to the grantor during his life and he paid the taxes, and the grantor always retained the possession and control of the land as before the deed was executed, it has been held that these circumstances rebutted any presumption of delivery from the deed being found in possession of the grantees.

> "The act of delivery and acceptance of a deed must be mutual and concurrent, and no acceptance at a subsequent time would give validity to the deed, unless there is proof that the grantor had agreed to a subsequent acceptance.

"To complete a delivery in its legal sense two elements are essential. The instrument must not only be placed within the control of grantee, but this must be done by the grantor with the intention that it shall become operative as a conveyance."

The evidence shows that the 1995 deed was recorded by Gwendolyn Boatman, but the recording was the only thing concerning the property over which Gwendolyn Boatman assumed dominion and control. The only thing delivered at the time of the 1995 purported gift deed was a piece of paper, not total dominion and control of the property. The homestead interest and 4 acre community property life estate was not accounted for, the homestead interest of Henry York in the 153.185 acre tract was not accounted for, and there was never any change of possession of the property. Appellant York continued to live there until the present time, collected her rents from the rent house, and continued to have her cattle on the property until 2007 (RR2, p. 184, line 15 to p. 185, line 4). She also testified that she continued to pay the taxes until 2010 (RR2, p. 169, lines 3-23; p. 168, line 19 to page 169, line 2). No dominion or control of the property was given at the time of the deed in 1995, and therefore there was no valid delivery of the gift at the time it was allegedly made in 1995. Appellee testified that Gwendolyn Boatman filed for a homestead exemption on the property in 2005 (RR2, p. 224, lines 18-19). Appellee testified that he was unsure when Gwendolyn Boatman put the taxes

in her name (RR2, p. 224, lines 22-23). The only evidence that Gwendolyn Boatman put the taxes in her name showed that she did so in 2004 or 2005, some 9-10 years after the execution of the deed, which is prima facie example that present dominion and control of the land was not transferred in 1995 (RR2, p. 224, lines 22-23; RR3, Exhibit 19, page 218; Exhibit 20, page 219).

In order for a gift to be effective, the law requires an "an immediate divestiture" of the rights of Appellant York out of herself and a "consequent immediate vesting of such rights" in her daughter Gwendolyn Boatman. Because of the homestead violation and failure to except the life estate on the 4 acres, there was no immediate vesting or divestiture of the entire 153.185 acres of land, and factually no immediate dominion or control of the property by Gwendolyn Boatman. There was no immediate delivery of a present interest and no valid gift.

## Acceptance of the Property by the Donee

Fourth, in order to complete a gift, there must be acceptance by the grantee, and the grantee must assume complete dominion and control over the property. The only thing delivered in this case was the paper deed, not dominion and control of the land or house, at the time of the alleged gift.

In *Sorsby v. State*, 624 S.W.2d 227 (Tex.App.-Houston [1st] 1981) the Court stated that normally, the recording of a deed is prima facie evidence of acceptance by the grantee. *Texas Land Mortgage Co. v. Cohen*, 138 Tex. 464, 159 S.W.2d 859

(1942); *McAnally v. Texas Co.,* 124 Tex. 196, 204, 76 S.W.2d 997, 1000 (1934). However, it is a rebuttable presumption. In *Richardson v. Laney*, 911 S.W.2d 489 (Tex.App.-Texarkana 1995), the court states, "When property is deeded from a parent to a child or children, it is presumed that a gift was intended. This presumption is rebuttable, but the person seeking to rebut the presumption must prove a lack of donative intent by clear and convincing evidence at the trial court level." It goes on to say, "Where the grantor does not receive any consideration for the transfer of real property and did not intend to make a gift, a resulting trust for the grantor's benefit arises even though the agreement is not in writing as required by the Texas Trust Act. When an express trust fails, the law applies a resulting trust with the beneficial title vested in the grantor, or in case of his death, his estate and devisees."id.

In *Conner v. Johnson*, 2004 Tex.App. Lexis 9633, the Fort Worth Court of Appeals stated, "A presumption of gift arises, if a parent delivers possession, conveys title, or purchases property in the name of a child. However, this is a rebuttable presumption that the opponent must show by clear and convincing evidence at trial."

Here, there was no delivery of possession of the property itself. The only thing that changed hands was the deed and subsequent recording by the daughter Gwendolyn Boatman. There was no change of tax rolls until 2005 (Exhibit 20,

RR3, page 218), and Gwendolyn Boatman did not apply for homestead exemption on the property until March 30, 2004 (RR3, Exhibit 19, page 218). Appellee testified that his mother filed for the homestead exemption in 2005 (RR2, p. 224 lines 18-19). She was not even living on the property at the time she applied for the homestead exemption. Her attorney listed her address as 2004 CR 2310 (the home of Gene Boatman, her husband) on December 22, 2004 (Exhibit 10, RR3, page 187 and Exhibit 8, RR3, page 177). Gwendolyn Boatman's letter in her own handwriting dated May 27, 2005 lists her address as 208 Glover Street, Sulphur Springs, Texas. At the most, the evidence shows that Gwendolyn Boatman was moving around from women's shelters in Paris to Appellee's house in California, and occasionally staying with her mother in Appellant's home on the 153.185 acres the subject of this lawsuit after Gwendolyn's breast cancer surgery in 2004 (RR2, p. 59, line 15 to p. 60, line 8) . Gwendolyn Boatman also owned another piece of property in Hopkins County where she and her husband lived, which was her homestead at the time of the application for homestead on the 153.185 acres (RR2, p. 67, lines 4-8). There was no immediate dominion or control over the property at the time of the alleged gift in 1995, and therefore no valid acceptance of the gift.

## No Acceptance at a Subsequent Time Gives Validity

In *Benavides v. Benavides*, 218 S.W. 566 (Tex. App. 1920), the Court stated, "The act of delivery and acceptance of a deed must be mutual and concurrent, and

no acceptance at a subsequent time would give validity to the deed, unless there is proof that the grantor had agreed to a subsequent acceptance.

## Statute of Limitations

If the deed is void, no gift was made and no cause of action for return of the property could accrue for purposes of starting the limitations period, except for the acquiring of title by adverse possession by Gwendolyn Boatman and Appellee Boatman. However, Appellee did not plead adverse possession and cannot use this as a defense. Also he did not present evidence at trial of his acquiring title by adverse possession.

### No trust property created because no possession changed hands.

If the 1995 deed is invalid, no real property was ever placed in the possession of Gwendolyn Boatman, and therefore no trust was created because no trust property was ever given to the trustee. The only thing in her possession concerning the 153.185 acre property was the 1995 paper deed that she recorded. Appellant Leta York continued to live in her house and had her cattle on the property until 2007. Gwendolyn Boatman did not live on the property, and all cattle placed on the property by her or her son Appellee Boatman were placed there with Appellant's permission. Appellee Boatman testified that Appellant gave him permission to place cattle on the property in 1992 before he went into the Air Force (RR2, p. 221, line 6 to p.222, line 2). It was after his mother's death and the

probate proceedings that Appellee Boatman moved onto the property and began to treat it as his own.

**A trust cannot be created unless there is trust property.**

Appellant would show the Court that unless property is placed in the hands of a trustee, no trust can be created. Therefore, for a constructive trust to have been created, the 1995 deed must be held to be valid, and possession of the property must be judged to have changed hands from Appellant into her daughter Gwendolyn Boatman. Section 112.001 of the Texas Property Code states, "A trust may be created by: (2) a property owner's inter vivos transfer of the property to another person as trustee for the transferor or a third person", and Section 112.003 of the Texas Property Code states, "Consideration is not required for the creation of a trust." However, Section 112.005 of the Texas Property Code states, "A trust cannot be created unless there is trust property."

**Conclusion as to Gift Deed**

The 1995 deed is not a valid gift deed. Therefore, if the gift deed is invalid, **no title ever passed and no possession of the land ever changed hands.** Before her death, Gwendolyn Boatman never tried to oust her mother and never took possession of the land (RR2, p. 185, lines 5-12). Only after Gwendolyn died in 2012 did Appellee Boatman move onto the property and build a barn/house and claim the land as his own (RR2, p. 175, line 22 to p. 176, line 17; p. 182, line 24 to

p. 184, Line 7)). Therefore, statute of limitation questions are not at issue here because there was no valid conveyance of the property, and the 1995 deed is void and unenforceable.

**POINT TWO:     There is no evidence or insufficient evidence to support the trial court's finding of fact No. 3, 4, 5, 6, and 8.**

The trial court's finding of fact Nos. 4, 5 and 8 shows that the 1995 deed was dated August 8, 1995.  Exhibit 4 entered into evidence shows that the deed was dated August 10, 1995 (Clerk's file page 154).  Appellee's attorney even admitted that the deed was signed on August 10, 1995 (RR2, p. 188, lines 2-13). Therefore there is no evidence to support these findings of fact.

The trial court's finding of fact No. 3 shows that Henry A. York died on August 22, 1995.  Appellant testified that Henry died on either August 20, 1995 or August 26, 1995 (RR2, page 173, lines 17-24; page 187, line 21 to p. 188, line 13). This is the only testimony concerning the death of Henry A. York.   There is no evidence to support the trial court finding of fact No. 3.

There is no evidence or insufficient evidence to support the trial court's finding of fact No. 6.  Appellee's attorney questioned Appellant and got her to admit that she had lived on the property from the date the deed was signed up until

the time of trial (RR2, p. 189, lines 11-14). Appellee testified that his mother had told him that Appellant had the right to live on the 4 acres for the rest of her life (RR2, p. 215, lines 1-6). He further testified that he had never had any indication from his mother or anyone else that wanted his grandmother off the property and that it has always been that Appellant was to live on the 4 acres (RR2, p. 252, line 25 to p. 253, line 3). Also, for 3 months after his mother died, Appellee collected the rent from a rent house on the 4 acre tract, but stopped collecting the rent when Appellant objected (RR2, p. 180, lines 2-15). All of these actions are actions not consistent with Appellee's exercising all the rights of title and ownership of the full 153.185 acres since the death of Gwendolyn Boatman through the date of trial.

**POINT THREE: If the 1995 deed was a valid deed and there was an agreement to deed the property back, then the deed created a constructive trust in favor of Appellant, and there was not sufficient notice of a repudiation of the trust so as to begin the running of the statute of limitations.**

Appellee Boatman denies that a constructive trust was created by the 1995 deed. He claims that he has full title through the 1995 deed and says that there was never any promise or agreement between Appellant and Appellee's mother to deed

the property back (RR2, p. 239, lines 11-16). This argument leaves Appellee with the assertion that the 1995 deed was a gift deed as argued above.

Witness Gene Boatman testified that he was in the room with both Appellant and his wife Gwendolyn Boatman when Appellant York and Gwendolyn talked about putting the property in Gwendolyn's name, and that the deed was given because Gwendolyn Boatman told her mother that because of the nursing home bills for Appellant's husband she could lose the land if she didn't get it out of her name. Gene Boatman further testified that his wife Gwendolyn stated that she would deed the property back to Appellant York anytime that Appellant wanted it back (RR2, p. 37, line 15 to p. 39, line 23). Gene Boatman further testified that he had many conversations through the years with Gwendolyn when she acknowledged that she was going to deed the property back to Appellant York (RR2, p. 39, line 24 to p. 40, line 5; p. 58, line 8 to p. 59, line 14; p. 67, line 25 to p. 68, line 8).

Although the trial court did not respond to Appellant's request for additional findings of facts and conclusions of law filed on May 1, 2015, three days before the court signed its findings of fact and conclusions of law on May 4, 2015, the trial court's findings of fact and conclusions of law do state that Appellant's claims as set forth in her pleadings are barred by the applicable statute of limitations. This finding of bar by statute of limitations presupposes that a cause of action accrued.

If the 1995 deed was a gift deed, no causes of action could accrue. There is no cause of action for failing to return a valid gift. Therefore, the court would have had to find that a cause of action did accrue for some breach of a duty.

The court made a finding that the testimony of Gene Boatman was not credible. However, even considering the testimony of only Appellant Leta York, there is ample evidence that there was an agreement between her and Gwendolyn Boatman to return the property when Appellant wanted it returned. Further, there is much evidence from the writings of Gwendolyn Boatman that she was struggling with whether or not she should put the property back in her mother's name. The Exhibit 7 (RR3, page 174) gift deed from Gwendolyn to her mother shows that she intended to give the property back to her mother. The Exhibit Q97 (RR3, page 127) on 10-14-03 states, "I'm concerned about transferring the Deed on Big daddy's land back to her. I've placed a call to my atty to ask him but wasn't able to talk to him. Sec'y was going to find out." The Exhibit Q98 (RR3, page 128) on 10-15-03 says, "Still worrying about the Deed transfer." The Exhibit Q99 (RR3, page 129) on 10-16-03 says, "Still no word on deed transfer. This afternoon I called atty's office again. The sec'y called back later and said that J. said, "Leave it alone. He can't touch it. Can do more harm than good by changing it." The Exhibit Q1 (RR3, page 29) and Exhibit P 4 (RR3, page 240) note in Gwendolyn's handwriting shows that the intent to transfer the property was

not a gift.  It was to protect the property from foreclosure by the nursing home. The handwritten note of Gwendolyn states, "Deed over to Gwen and maintain life estate on house and 1 acre.  Leta can live on it as long as Leta lives.  Can have a tax freeze.  Johnny Ramey said not do this because nursing home can take an amt to maintain living there for their part of money."  The Exhibit 11 (RR3, page 188) (letter from Gwendolyn Boatman to Jay Garrett) states, "I wanted the land to go back to my mother."

## Constructive Trust Created

If the deed was valid and there was the agreement to deed the property back, case law shows that a constructive trust was created for the benefit of Appellant York.   As stated earlier, in *Richardson v. Laney*, 911 S.W.2d 489 (Tex.App.-Texarkana 1995), the court states, "When property is deeded from a parent to a child or children, it is presumed that a gift was intended. This presumption is rebuttable, but the person seeking to rebut the presumption must prove a lack of donative intent by clear and convincing evidence at the trial court level."  It goes on to say, "Where the grantor does not receive any consideration for the transfer of real property and did not intend to make a gift, a resulting trust for the grantor's benefit arises even though the agreement is not in writing as required by the Texas Trust Act. When an express trust fails, the law applies a resulting trust with the

beneficial title vested in the grantor, or in case of his death, his estate and devisees."Id.

The case of _Kostelnik v. Roberts_, 680 S.W.2d 532 (Tex.App.-Corpus Christi 1984) presents almost the same situation as does the present case before this Court. In the _Kostelnik_ case, Appellee testified that, before they were moved into the convalescent home, she and her husband were told by Thomas Kostelnik "that we couldn't have any property or anything" at Stevens Convalescent Home and that, "if we did go into Stevens, everything we had would be taken away from us." Appellee further testified that, regarding their property, Thomas Kostelnik suggested that she and her husband "put it all in his name, and then Stevens wouldn't get it away from us" and that it was upon that suggestion that "we agreed to let Tom keep our money and everything for us" until the time "when Bob got well, that everything would be in his name, if we got well, he would turn it back to us."

The _Kostelnik_ Court further stated, "A constructive trust arises where a conveyance is **induced on agreement of a fiduciary or confidant to hold in trust for a reconveyance or other purpose**, where the fiduciary or confidential relationship is one upon which the grantor justifiably can and does rely and where the agreement is breached, since the breach of the agreement is an abuse of the confidence, and it is not necessary to establish such a trust to show fraud or intent not

to perform the agreement when it was made." *Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985 (Tex. 1948) at p. 988, citing 54 Am.Jur. 1978, § 233.  Such confidential relationships may arise not only from technical fiduciary relationships, such as attorney-client, trustees cestui que trust, partner and partner, etc., but may arise informally from moral, social, domestic or purely personal relationships. *Thigpen v. Locke*, 363 S.W.2d 247 (Tex. 1962); *Miller v. Huebner*, 474 S.W.2d 587 (Tex.Civ.App. -- Houston [14th Dist.] 1971, writ ref'd. n.r.e.).  Also, the confidential relationship must exist apart and prior to the transaction made the basis of this suit. *Consolidated Gas & Equipment, Co. v. Thompson*, 405 S.W.2d 333 (Tex. 1966); *Miller v. Huebner*, 474 S.W.2d 587 (Tex. Civ.App. -- Houston [14th Dist.] 1971, writ ref'd. n.r.e.).

The two differences between our present case and the *Kostelnik* case is that in the *Kostelnik* case there was no question raised as to the validity of the deed in question, and the property actually did change hands.

### Fiduciary Relationship

The evidence is clear that Gwendolyn Boatman had a fiduciary relationship with her mother Appellant York.  Before her husband Henry died, Appellant depended on Gwendolyn for everything.  She helped with his medicine, paid her bills, was on her bank account, supplied groceries, helped Appellant care for her step-father Henry, sat with her step-dad when Appellant had to go out, and was the confidant and

advisor to her mother. She was Appellant's only child and heir (RR2, p. 173, line 25 to p. 174, line 19). Appellee admitted in his testimony that Appellant and his mother, her daughter, were close and Appellant depended on her and trusted her (RR2, p. 230, lines 6-14). Gene Boatman testified that Appellant and her daughter, his wife, had a 100% trust relationship and they trusted each other totally (RR2, p. 43, line 4 to p. 44, line 17).

Mother and daughter relationships are not automatically fiduciary relationships, although spouses owe a fiduciary duty to each other. _Southwest Tex. Pathology Assocs. V. Roosth_, 27 S.W.3d 204 (Tex.App.-San Antonio 2000, pet.dism'd). Mother and daughter would be a relationship where the court would look to the facts. Courts sometimes find a fiduciary duty based on informal relations, especially where this relationship is based on a high degree of trust, influence, or confidence. _Crim Truck & Tractor Co. v. Navistar International Transportation Corp._, 823 S.W.2d 591 (Tex. 1962); _Texas Bank & Trust Co. v. Moore_, 595 S.W.2d 502 (Tex. 1980). A fiduciary relationship may arise either as a result of dominance on the part of one or weakness and dependence on the part of the other. _Associated Indemnity Corp v. CAT Contracting, Inc._, 918 S.W.2d 580 (Tex.App.-Corpus Christi 1996)

Appellant Leta York had a fiduciary relationship with her daughter Gwendolyn Boatman before the final illness of Appellant's husband and Gwendolyn's step-father. Appellant was even more dependent upon her daughter during the last few weeks of

her husband's life, and there was definitely a fiduciary relationship 16 days before his death when Gwendolyn convinced her mother to deed the property over into Gwendolyn's name upon Gwendolyn's urging that the government would take the property if Appellant did not get it out of her name.

## Breach of Fiduciary Duty

If the Court finds a Constructive Trust, then Gwendolyn Boatman by reason of the trust relationship and because of her personal position of trust with her mother during the last illness of her step-father would have a fiduciary relationship with her mother. Clearly repudiating the trust relationship between Gwendolyn Boatman and Appellant would have breached Gwendolyn Boatman's fiduciary duty to Appellant York. However, a breach of Gwendolyn's fiduciary duty would occur when Gwendolyn absolutely refused to deed the property back and told this to the Appellant or the Appellant should have known, with the exercise of reasonable diligence, of her injury. The notice should be "plain, strong and unequivocal." The evidence clearly shows in this case that no plain, strong and unequivocal repudiation was ever made known to Appellant, and a therefore cause of action for breach of fiduciary duty or repudiation of the trust ever accrued.

## Limitations – inherently undiscoverable

The Statute of Limitations for breach of fiduciary duty is 4 years from the date of discovery by Appellant York of Gwendolyn Boatman's breach of fiduciary

duty (see CPRC Section 16.004). The **discovery rule** applies for Fiduciary Duty Breach. In the case of *Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713 (Tex.App.- Eastland 2002) the Court stated, "The supreme court categorized fiduciary duty cases under the discovery rule, but the court held that the injuries from a breach of fiduciary duty are **presumed to be inherently undiscoverable**. see *Little v. Smith*, 943 S.W.2d 414, 425 (Tex. 1997)(Enoch, J., concurring). Because of this presumption, breach of fiduciary duty cases are treated like fraud cases in terms of deferral of the cause of action; the issue is when the Appellant knew or should have known, with the exercise of reasonable diligence, of his or her injury.

The question in this case is therefore, "When should an ordinary 75-95 year-old woman taking care of her husband in his last illness and depending on her only daughter through the years know or should have known, with the exercise of reasonable diligence, that Gwendolyn Boatman was absolutely refusing to give her the property back and totally repudiating the agreement Appellant thought they had. Some deference should be given for a 90 year-old. Appellant is sharp, but she is still advanced in age. Even the criminal law in effect today makes allowances for increased punishment for taking advantage of an elderly person.

Appellant trusted her daughter, and her daughter kept telling her that she would give the land back later when she got around to it. At no time does the

evidence show that Gwendolyn Boatman told the Appellant outright in plain, strong, and unequivocal terms that she was not going to give her the property back. The Appellant and Gwendolyn Boatman went to the tax office together in 1996 and arranged for the land to have an agricultural tax exemption (see Gwendolyn Boatman's own handwriting on the envelope shown as Exhibit P3, RR3, page 239). Yet, Gwendolyn Boatman did not apply for a homestead exemption for herself on the property until March 30, 2005 (see Exhibit 19, RR3, page 218). Appellant did not even know that Gwendolyn Boatman changed the tax rolls in 2005 to reflect that she owned the property (Exhibit 20, RR3, page 219). The first time she knew that someone was claiming the property as their own was after Gwendolyn died in 2012, and Appellee Boatman moved onto the property in 2012 and began telling her that he could move her off if he wanted to (RR2, p. 175, line 22 to p. 176, line 3). It was right after this that Appellant filed suit in January 2013.

Appellant testified that she did not know that the tax records had been changed until after Gwendolyn's death (RR2, p. 168, line 19 to p. 169, line 2). Appellant would give the money to Gwendolyn to pay the taxes each year, even though the tax record reflected that Gwendolyn was paying the taxes (RR2, p. 169, lines 3-23; p. 196, line 10 to p. 197, line 13). There was no other evidence in the entire trial as to Gwendolyn putting the property in her name on the tax rolls other than in 2005.

Appellee testified that he was not sure when Gwendolyn put the property in her name on the tax roll (RR2, p. 224, line 22-23).

We do know that there was a struggle mentally for Gwendolyn Boatman as to whether she should put the property back into her mother's name. See the 2003 Gift deed and later Recission [sic] of Gift Deed dated December 31, 2004 (Exhibit 12, RR3, page 189). Why would Gwendolyn Boatman have an attorney make out and hold a gift deed back to her mother? Why would she not at that time just make out the deed to her son Todd?

## Notice Required

The notice of breach required to be given by a fiduciary trustee to the beneficiary must be "plain, strong and unequivocal" and it must be "brought home to the beneficiary". In the case of _Treuil v. Treuil_, 311 S.W.3d 114 (Tex.App.-Beaumont 2009), the Court stated, "Under the common law, the statute of limitations generally does not begin to run on a claim against the trustee until the **trustee repudiates the trust** and **notifies the beneficiary"**. See _Langford v. Shamburger_, 417 S.W. 2d 438, 445 (Tex. Civ. App.--Fort Worth 1967, writ ref'd n.r.e.), disapproved of on other grounds by _Tex. Commerce Bank, N.A. v. Grizzle_, 96 S.W.3d 240, 249-50 (Tex. 2002); The repudiation must be "plain, strong, and unequivocal . . . open[,]" and "to be sufficient and effective must have been brought home to the beneficiary." _Langford_, 417 S.W. 2d at 445. The date a

beneficiary learns the trustee has taken possession of trust property is not the date a claim against the trustee accrues, nor is it the date limitations begin to run. Only in exceptional circumstances should limitations run in favor of a **silent trustee**. *Langford v. Shamburger*, 417 S.W. 2d 438, 445 (Tex. Civ. App.--Fort Worth 1967, writ ref'd n.r.e.)

"The correct rule in this connection is well stated in 54 A.L.R. 2d, § 2 at P. 23: The authorities are generally well agreed that for a trustee's repudiation of an express trust to be sufficient to set the statute of limitations in motion in his favor and against the beneficiary, the repudiation must be plain, strong, and unequivocal. . . . Generally speaking, it must be an open repudiation, and to be sufficient and effective must have been brought home to the beneficiary." *Langford v. Shamburger*, 417 S.W. 2d 438, 445 (Tex. Civ. App.--Fort Worth 1967, writ ref'd n.r.e.)

In connection with this issue of when the statute of limitations begins to run, the *Langford* court. *id. Page 445* quoted from the *Courseview* case: "We are not here dealing with an arm's length transaction. The fiduciary relationship must be taken into account in determining whether the beneficiary exercised the requisite degree of diligence*." Courseview, Incorporated v. Phillips Petroleum Co*., 158 Tex. 397, 312 S.W.2d 197 (Tex. 1957).

It should be noted that there is no evidence that anyone ousted the Appellant from the use and enjoyment of her property until after Gwendolyn Boatman died.

Therefore, there was no "plain, strong, and unequivocal" notice to Appellant that Gwendolyn Boatman was claiming Appellant's land and repudiating their agreement to hold Appellant's property in trust.

Appellee testified at trial that the following were the ways his mother gave notice to everyone that she was claiming full title to the property. "She went and paid the taxes, and everyone assumed that it was her property." (RR2, p. 227, lines 7-11). He also testified that her notice consisted of recording a deed, putting cattle on the land, living on the property, and receiving mail there (RR2, p. 230, line 18 to p. 231. Line 22). He also testified however, that Appellant had given him permission to put cattle on the property in 1992 before he went into the Air Force (RR2, p. 221, line 6 to p. 222, line 2).

In summary, there is no evidence of any **plain, strong and unequivocal** notice given by Gwendolyn Boatman to Appellant York to put her on notice that Gwendolyn had totally repudiated the trust and was never going to give the property back to Appellant York. Therefore the statue of limitations never began to run against Appellant York during Gwendolyn's lifetime. After Gwendolyn died in 2012, Appellee Boatman did give unequivocal notice to Appellant that he was claiming her land, and she filed suit in January 2013. Gwendolyn Boatman died on April 22, 2012 and any trust relationship between her and the Appellant is ended (RR2, p. 203, lines 8-17) and the deed should be declared void.

## Unclean Hands

The Appellee cannot claim the doctrine of unclean hands here. He has not been harmed by any attempt by Appellant or his mother to prevent the government from taking the property for debt. *"Regardless of the truthfulness of appellants' allegations that appellee defrauded the State of Texas and of appellees' possible participation in the alleged questionable dealings, appellants are not in a position to assert the "clean hands" doctrine. "The party to a suit, complaining that his opponent is in court with 'unclean hands' because of the latter's conduct in the transaction out of which litigation arose, or with which it is connected, must show that he himself has been injured by such conduct, to justify the application of the principle to the case. The wrong must have been done to the Appellee himself and not to some third party." Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401 (1960)."*

Also, there is evidence of unusual, questionable influence and suggestions to Appellant on the part of the Appellee. After Gwendolyn Boatman died and the Appellee moved in with Appellant, he convinced her to cash out her $30,000 CD from the bank and let him hide it in her wall (RR2, p. 177, line 7 to p. 178, line 8)

## CONCLUSION

1. The 1995 deed was not a valid gift deed and should be declared void. Then this Court should declare that clear title to the 183.185 acre tract is vested in the Appellant.

2. If the Court does not declare that the 1995 deed is void, the Court should declare that the 1995 deed created a constructive trust relationship between the Appellant and Gwendolyn Boatman and that the statute of limitation has not run on a breach of fiduciary relationship between Appellant and Gwendolyn Boatman or breach of the trust agreement. Since the trust relationship has ended with the death of Gwendolyn Boatman, the 1995 deed should be declared void and title to the property confirmed in the Appellant.

3. If the Court decides that the statute of limitations have run, then Appellee only owns a one-half interest in the land, since his mother's interest would have been acquired during the marriage and would be community property since it was not acquired by gift, devise or descent.

## PRAYER

Appellant prays that this Court will declare that the 1995 deed from Appellant to Gwendolyn Boatman was not a valid gift of the 153.185 acre tract of land and that the deed is void. Appellant further prays that this Court will set aside

the findings of fact and conclusion of law as requested, and that if this Court does find that there was a valid deed, that this Court will find that the conveyance created a constructive trust in favor of Appellant and that adequate notice of a repudiation of that trust was not given to Appellant and that any statute of limitations for repudiation of the trust has not run and that the trust relationship has ceased with the death of Gwendolyn Boatman. Accordingly, the deed should be set aside and title quieted in the name of Appellant for the 153.185 acres of land. If the Court finds that the statute of limitations have run, Appellant requests that this Court declare that Appellee only owns a one-half interest in the land since the property would have been acquired during the marriage of Gwendolyn Boatman to her husband Gene Boatman.

Respectfully submitted

/PHIL SMITH/

Phil Smith, Attorney for Appellant

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the TEXAS RULES OF CIVIL PROCEDURE on October 19, 2015.

/PHIL SMITH/

PHIL SMITH

## CERTIFICATE OF COMPLIANCE

I certify that this Appellant's brief contains 11, 492 words as counted by Microsoft Word program.

/PHIL SMITH/

PHIL SMITH

## APPENDIX TO APPELLANT'S BRIEF

**Exhibit A – Trial Court Judgment**

**Exhibit B – Trial Court's Findings of Fact and Conclusions of Law**

**Exhibit C – 1967 deed for 4 acre life estate**

**Exhibit D -- 1985 partition deed**

**Exhibit E -- 1995 deed from Appellant to Gwendolyn Boatman**

**Exhibit F – 2003 gift deed from Gwendolyn Boatman to Appellant**

**Exhibit G – Rescission of gift deed**

# APPENDIX

# EXHIBIT A



| | | |
|---|---|---|
| **LETA YORK** | § | **IN THE DISTRICT COURT** |
| **Plaintiff** | § | |
| | § | |
| **V.** | § | **62ND JUDICIAL DISTRICT** |
| | § | |
| **TODD BOATMAN** | § | |
| **Defendant** | § | **HOPKINS COUNTY, TEXAS** |

## FINAL JUDGMENT

On the 26th day of February, 2015, this case came on for trial. Plaintiff, **LETA YORK** appeared in person and by attorney of record and announced ready for trial. Defendant, **TODD BOATMAN** appeared in person and by attorney of record and announced ready for trial. No jury having be demanded, all questions of fact were submitted to the Court.

The Court, after hearing the evidence and argument of counsel enters the following judgment.

**IT IS ORDERED, ADJUDGED** and **DECLARED** that the Defendant, **TODD BOATMAN** is the fee simple owner of 153.185 acres of land more fully described in Exhibit "A" which is attached hereto and title to said 153.185 aces is quieted in Defendant, **TODD BOATMAN.**

**IT IS ORDERED, ADJUDGED** and **DECLARED** that Plaintiff **LETA YORK** has a life estate in four (4) acres of land which is a part of the aforesaid 153.185 acres and is more fully described in Exhibit "B" which is attached hereto.

All other relief requested in this case and not expressly granted herein is **DENIED**.

All costs of court are adjudged against the party incurring them.

This judgment finally disposes of all parties and claims and is appealable.

SIGNED this the ____ day of _____, 2015.

_____
JUDGE PRESIDING

# EXHIBIT "A"

All that certain lot, tract or parcel of land, being a part of the Mansel R. Crisp Survey No. 379, Vol. 46 A-183, located about 1 mile Northeast of Weaver, Hopkins County, Texas, being the same land described in patent to Mansel R. Crisp recorded in Book 24, Page 232 of the Deed Records of Hopkins County, Texas, being a part of the same land described in a Deed of Trust from W. L. Smith and wife, Donnie Smith to the Federal land Bank of Houston, dated December 12, 1933, recorded in Vol. 44, Page 444 of the Deed of Trust Records of Hopkins County, Texas;

BEGINNING at a 3/8" iron stake set in the West boundary line of the said M. R. Crisp Survey for the Southwest corner, being N 0° 03' 25" W a distance of 2106.025 feet from the Southwest corner of the said Crisp Survey;

THENCE N 0° 03' 25" W a distance of 1510.175 feet to a 3/8" iron stake set at base of a corner fence post for the Northwest corner, being in the South boundary line of a County Road;

THENCE N 89° 40' 26" E a distance of 3706.60 feet along the South boundary line of a County Road to a P. K. nail set for the northeast corner;

THENCE S 0° 27' 16" W a distance of 2028.10 feet along the West boundary line of a County Road, being the Southeast corner of a 4 acre tract deeded to Leta Smith York and husband, Henry A. York by W. L. Smith and wife, Donnie Smith, dated February 25, 1967, recorded in Vol. 305, Page 523 of the Deed Records of Hopkins County, Texas;

THENCE S 89° 53' W a distance of 513 feet to a 3/8" iron stake set for a point of intersection;

THENCE N 81° 05' 30" W a distance of 3214.72 feet to a 3/8" iron stake set in the West boundary line of the said M. R. Crisp Survey for the Southwest corner being the Point of Beginning.

# EXHIBIT "A" CONTINUED

CONTAINING 153.185 acres of land, more or less.

Being the same land described in the Deed from Lorene Wynn et vir Paul C. Winn, to Leta York dated June 24th, 1985, recorded in Vol. 448, Page 844, Deed Records, Hopkins County, Texas.

Being the same land described in a Deed dated August 10, 1995 from Leta York to Gwendolyn Boatman of record in Vol. 208, Page 155 Real property Records of Hopkins County, Texas.

# EXHIBIT "B"

All that certain lot, tract or parcel of land situated in Hopkins County, Texas, being a part of the Mansel R. Crisp Survey, Abst. No. 183, and described by metes and bounds as follows, to-wit:

BEGINNING at a Post Oak tree 1685 feet South of the NE corner of 318¼ acre tract of land described in Deed of Trust from W. L. Smith and wife, Donnie Smith to Federal land Bank of Houston of date December 23, 1933, of record in Vol. 44, Page 444 of the Deed of Trust Records of Hopkins County, Texas;

THENCE South with the EB line of said 318¼ acre tract of land 335 feet to a stake for corner;

THENCE West 353 feet to a stake for corner;

THENCE North and parallel with the EB line hereof 335 feet to a stake for corner;

THENCE East 353 feet to the place of beginning.

Containing 4 acres of land, more or less.

Being a part of the land described in the Deed of Trust from W. L. Smith and wife, Donnie Smith to Federal Land Bank of Houston of date December 23, 1933 of record in Vol. 44, Page 444 of the Deed of Trust Records of Hopkins County, Texas.

Being the same land described in a Deed dated February 25, 1967 from W. L. Smith and wife, Donnie Smith to Leta Smith York and husband, Henry A. York of record in Vol. 305, Page 523 Deed Records of Hopkins County, Texas.

# APPENDIX

# EXHIBIT B

| | | |
|---|---|---|
| LETA YORK | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| V. | § | 62ND JUDICIAL DISTRICT |
| | § | |
| TODD BOATMAN | § | |
| Defendant | § | HOPKINS COUNTY, TEXAS |

## FINDINGS OF FACT AND
## CONCLUSIONS OF LAW

The above captioned cause came on for trial before the Court without a jury on February 26, 2015. All parties and their attorneys were present. After consideration of the pleadings, the evidence, the argument and briefs from counsel, the Court, in response to a request from Plaintiff makes its findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

1. On August 8, 1995, Plaintiff conveyed 153.185 acres of land by general warranty deed to her daughter, Gwendolyn Boatman. The conveyance was subject to the homestead interest of Henry A. York who did not join in the deed. The conveyance did not contain any exceptions or reservations of title.

2. The 153.185 acres of land was the separate property of Plaintiff.

3. Henry A. York died on August 22, 1995.

4. Shortly after the death of Henry A. York, Gwendolyn Boatman informed Plaintiff that she claimed ownership of the 153.185 acres by reason of the August 8, 1995 deed.

5. Gwendolyn Boatman exercised all the rights of title and ownership of the 153.185 acres since August 8, 1995 up until her death.

6. Defendant exercised all the rights of title and ownership of the 153.185 acres since the

death of Gwendolyn Boatman through the date of trial.

7.

8. Again in 2004 and 2005 Gwendolyn Boatman informed the Plaintiff that she claimed ownership of the 153.185 acres of land by reason of the August 8, 1995 deed.

9. Gwendolyn Boatman died on April 22, 2012, leaving a Will naming the Defendant as the sole beneficiary of her estate, which included the 153.185 acres of land. Gwendolyn Boatman's Will was admitted to probate on June 12, 2012.

10. The Court in exercising its equitable powers, awarded Defendant a life estate in approximately 4 acres of land as set forth in the final judgment.

11. The Court found the testimony of Gwendolyn Boatman's husband and son, who testified as witnesses for the Plaintiff, not credible.

## CONCLUSION OF LAW

1. Defendant is the fee simple owner of the 153.185 acres of land, subject to a life estate in favor of Plaintiff in the 4 acres of land.

2. The homestead interest of Henry A. York ceased upon his death on August 22, 1995.

3. Plaintiff's claims as set forth in her pleadings are barred by the applicable statute of limitations.

4. Defendant is entitled to equitable relief awarding her a life estate in approximately 4 acres of land as set forth in the final judgment.

Signed this the ___4___ day of ____My_____, 2015.

_____
JUDGE PRESIDING

A CERTIFIED COPY
ATTEST:
ERYL RUECHER, DISTRICT CLERK
HOPKINS COUNTY, TEXAS
BY _____ DEPUTY
DATE 10-19-15

# APPENDIX

# EXHIBIT C

A-P—WARRANTY DEED—With Single, Joint and Wife's Separate Acknowledgments

MARTIN Stationery Co., Dallas

# THE STATE OF TEXAS,

County of....HOPKINS...............

**Know All Men By These Presents:** 523

That we, W. L. Smith and wife, Donnie Smith

of the County of **Hopkins** , State of **Texas** for and in consideration of

the sum of

TEN AND NO/100- - - - - - - - - -($10.00)- - - - - - - DOLLARS,

to us cash in hand paid by Leta Smith York and husband, Henry A. York and other good and valuable consideration, the receipt of which is hereby fully acknowledged and confessed and the further consideration of being subject to the limitations hereinafter placed on said land;

have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey/unto the said subject to the hereinafter limitations

Leta Smith York and husband, Henry A. York

of the County of **Dallas** , State of **Texas** all that certain lot, tract or parcel of land situated in Hopkins County, Texas, being a part of the Mansel R. Crisp survey, Abst. No. 183, and described by metes and bounds as follows, to-wit:

Beginning at a Post Oak tree 1685 feet South of the NE corner of 318½ acre tract of land described in Deed of Trust from W. L. Smith and wife, Donnie Smith to Federal Land Bank of Houston of date December 23, 1933, of record in Vol. 44, page 444 of the Deed of Trust Records of Hopkins County, Texas;

Thence South with the EB line of said 318½ acre tract of land 335 feet to a stake for corner;

Thence West 353 feet to a stake for corner;

Thence North and parallel with the EB line hereof 335 feet to a stake for corner;

Thence East 353 feet to the place of beginning.

Containing 4 acres of land, more or less.

Being a part of the land described in the Deed of Trust from W. L. Smith and wife, Donnie Smith to Federal Land Bank of Houston of date December 23, 1933, of record in Vol. 44, page 444 of the Deed of Trust Records of Hopkins County, Texas.

It is intended by this conveyance that the land herein to Leta Smith York and husband, Henry A. York shall be for and during their natural lifetimes and upon the death of the last of the said Leta Smith York or Henry A. York then full and complete fee simple title to the land conveyed herein together will all improvements situated thereon shall pass to our grand daughter, Gwendolyn Boatman.

524

TO HAVE AND TO HOLD the above described premises, together with all and singular, the rights and appurtenances thereto in anywise belonging unto the said

Leta. Smith York and husband, Henry A. York and their

heirs and assigns forever; and we do hereby bind ourselves and our

heirs, executors and administrators, to Warrant and Forever Defend all and singular the said premises unto the. said

Leta Smith York and husband, Henry A. York and their

heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

Witness ourhands at Sulphur Springs, Texas this 25th day of February , A.D. 19 67.

Witnesses at Request of Grantor:

...................................................................................

...................................................................................
W. L. Smith

...................................................................................
Donnie Smith

...................................................................................

THE STATE OF TEXAS,)

COUNTY OF_____Hopkins.

BEFORE ME, the undersigned authority,

in and for said County, Texas, on this day personally appeared W. L. Smith
and Donnie Smith
his wife, both known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they each executed the same for the purposes and consideration therein expressed, and the said Donnie Smith
wife of the said W. L. Smith having been
examined by me privily and apart from her husband, and having the same fully explained to her, she, the said
Donnie Smith acknowledged such instrument to be her act and deed, and she declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, This 25th day of February , A.D. 19 67.

Faye Phillips

Notary Public, Hopkins County, Texas

My Commission Expires June kst 19 67.

Filed for record 27 day of Feb , A.D. 1967, 3:22 P. M.
Recorded the 2nd day of March, A.D. 1967, 2:00 o'clock P.M.
Hazel Minter, Clerk, County Court, Hopkins County, Texas
By Geneva Byrd Deputy

# APPENDIX

# EXHIBIT D

125—WARRANTY DEED

TEXAS STANDARD FORM

# The State of Texas,

## County of Hopkins

### Know All Men by These Presents:

### 3942

That LORENE WYNN et vir PAUL C. WINN

of the County of Hopkins State of Texas for and in consideration

of the sum of

----ONE AND NO/100-------------($1.00)--------------- **DOLLARS**

us, cash

to in hand paid by LETA YORK, as her separate property

and the further consideration of a partition and division of land owned

jointly by Grantors and Grantee,

have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey, unto the said

LETA YORK

of the County of Hopkins State of Texas all that certain

All my right, title, interest and claim in and to the following described
land, to-wit:
All that certain lot, tract or parcel of land, being a part of the Mansel
R. Crisp Survey No. 379, Vol. 46 A-183, located about 1 mile Northeast of
Weaver, Hopkins County, Texas, being the same land described in patent
to Mansel R. Crisp recorded in Book 24, Page 232 of the Deed Records of
Hopkins County, Texas, being a part of the same land described in a
Deed of Trust from W. L. Smith and wife, Donnie Smith to the Federal
Land Bank of Houston dated December 23, 1933, recorded in Vol. 44, Page
444 of the Deed of Trust Records of Hopkins County, Texas;
    BEGINNING at a 3/8" iron stake set in the West boundary line of
the said M. R. Crisp Survey for the Southwest corner, being N 0° 03' 25"
W a distance of 2106.025 feet from the Southwest corner of the said
Crisp Survey;
    THENCE N 0° 03' 25" W a distance of 1510.175 feet to a 3/8" iron
stake set at base of a corner fence post for the Northwest corner, being
in the South boundary line of a County Road;
    THENCE N 89° 40' 26" E a distance of 3706.60 feet along the South
boundary line of a County Road to a P. K. nail set for the Northeast
corner;

THENCE S 0° 27' 16" W a distance of 2028.10 feet along the West boundary line of a County Road, being the Southeast corner of a 4 acre tract deeded to Leta Smith York and husband, Henry A. York by W. L. Smith and wife, Donnie Smith dated February 25, 1967, recorded in Vol. 305, Page 523 of the Deed Records of Hopkins County, Texas;

THENCE S 89° 53' W a distance of 513 feet to a 3/8" iron stake set for a point of intersection;

THENCE N 81° 05' 30" W a distance of 3214.72 feet to a 3/8" iron stake set in the West boundary line of the said M. R. Crisp Survey for the Southwest corner being the Point of beginning.

CONTAINING 153.185 acres of land, more or less.

BEING THE SAME LAND surveyed by Bob Baker, Registered Public Surveyor in the State of Texas of date February 27, 1984.

THIS DEED IS MADE SUBJECT to all easements, right of ways and reservations of record.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said

LETA YORK, her

heirs and assigns forever and we do hereby bind ourselves, our

heirs, executors and administrators, to Warrant and Forever Defend, all and singular the said premises unto the said

LETA YORK, her

heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

WITNESS our hand s

this 24th day of June , 19 85.

Lorene Wynn
LORENE WYNN

Paul C. Wynn
PAUL C. WINN

Witness at request of Grantor:

Mailing address of grantee:

Name:       LETA YORK
Address:    Rt. 2, Box 28
            Saltillo, Texas 75478

---

(Acknowledgment)

STATE OF TEXAS
COUNTY OF    HOPKINS

This instrument was acknowledged before me on the **26th** day of   **June**   , 19 **85** ,

by     LORENE WYNN ET VIR, PAUL C. WINN

My commission expires:

2/28/1989

Notary Public, State of Texas
Notary's printed name:   **Mildred Ramey**

---

(Acknowledgment)

STATE OF TEXAS
COUNTY OF

This instrument was acknowledged before me on the          day of

by

My commission expires:

Notary Public, State of Texas
Notary's printed name:

---

FILED FOR RECORD THE 27TH DAY OF JUNE, A.D. 1985 AT    4:14    P. M.
RECORDED THE 2ND DAY OF JULY, A.D. 1985 AT 2 O'CLOCK, P.M.
      MARY ATTLESEY, CLERK COUNTY COURT, HOPKINS COUNTY, TEXAS
                BY _____ DEPUTY

# APPENDIX

# EXHIBIT E

# The State of Texas,

### County of HOPKINS

**Know All Men by These Presents:**

3772.

THAT  I, LETA YORK, not joined herein by my husband, since this constitutes my separate and individual property,

of the County of        Hopkins        State of      Texas              for and in consideration

of the sum of
----------TEN AND NO/100----------($10.00)------------------- DOLLARS

to me, cash  in hand paid by   GWENDOLYN BOATMAN, as her separate property,

XXXXXXXXX

and other good and valuable consideration, the receipt of which is hereby fully acknowledged,

subject to reservations from and exceptions to conveyance and warranty, have  Granted, Sold and Conveyed, and by these presents do    Grant, Sell and Convey,/unto the said

GWENDOLYN BOATMAN, as her separate property

whose mailing address is   Route 2, Box 35, Sulphur Springs, Texas 75482
of the County of   Hopkins        State of    Texas            xkxhatxxxkxkx

All that certain lot,  tract or parcel of land,  being a part of the Mansel R. Crisp Survey No. 379, Vol. 46 A-183,  located about 1 mile Northeast of Weaver, Hopkins County, Texas, being the same land described in patent to Mansel R. Crisp recorded in Book 24,  page 232 of the Deed Records of Hopkins County, Texas, being a part of the same land described in a Deed of Trust from W. L. Smith and wife, Donnie Smith to the Federal Land Bank of Houston, dated December 12, 1933, recorded in Vol. 44, page 444 of the Deed of Trust Records of Hopkins County, Texas;

BEGINNING at a 3/8" iron stake set in the West boundary line of the said M. R. Crisp Survey for the Southwest corner, being N 0° 03' 25" W a distance of 2106.025 feet from the Southwest corner of the said Crisp Survey;

THENCE N 0° 03' 25" W a distance of 1510.175 feet to a 3/8" iron stake set at base of a corner fence post for the Northwest corner, being in the South boundary line of a County Road;

THENCE N 89° 40' 26" E a distance of 3706.60 feet along the South boundary line of a County Road to a P. K. nail set for the Northeast corner;

THENCE S 0° 27' 16" W a distance of 2028.10 feet along the West boundary line of a County Road, being the Southeast corner of a 4 acre tract deeded to Leta Smith York and husband, Henry A. York by W. L. Smith and wife, Donnie Smith, dated February 25, 1967, recorded in Vol. 305, page 523 of the Deed Records of Hopkins County, Texas;

THENCE S 89° 53' W a distance of 513 feet to a 3/8" iron stake set for a point of intersection;

THENCE N 81° 05' 30" W a distance of 3214.72 feet to a 3/8" iron stake set in the West boundary line of the said M. R. Crisp Survey for the Southwest corner being the Point of Beginning.

CONTAINING 153.185 acres of land, more or less.

BEING the same land described in the Deed from Lorene Wynn et vir Paul C. Winn, to Leta York dated June 24th, 1985, recorded in Vol. 448, page 844, Deed Records, Hopkins County, Texas.

RESERVATIONS.FROM.AND.EXCEPTIONS.TO.CONVEYANCE.AND.WARRANTY:

Subject to all outstanding Reservations, Restrictions and Rights of Way of record and to all visible and apparent easements.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said GWENDOLYN BOATMAN, her

heirs and assigns forever and I do hereby bind myself, my

heirs, executors and administrators, to Warrant and Forever Defend, all and singular the said premises unto the said GWENDOLYN BOATMAN, her

heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

WITNESS my hand at Sulphur Springs, Hopkins County, Texas, this 10th day of August 19 95 .

LETA YORK

Witness at request of Grantor:

VOL 208 PAGE 157

(Acknowledgment)

STATE OF TEXAS
COUNTY OF HOPKINS

This instrument was acknowledged before me on the _10_ day of _August_ , 19 95 ,
by   LETA YORK

My commission expires:                    J. R. RAMEY          Notary Public, State of Texas
_2-28-1997_                               NOTARY PUBLIC        Notary's printed name: _J. R. Ramey_
                                          STATE OF TEXAS
                                          Commission Expires 2-28-97

(Acknowledgment)

STATE OF TEXAS
COUNTY OF

This instrument was acknowledged before me on the         day of                , 19.
by

My commission expires:

_____                          Notary Public, State of Texas
                                          Notary's printed name:

(Corporate Acknowledgment)

STATE OF TEXAS
COUNTY OF

This instrument was acknowledged before me on the         day of                , 19
by
a                           corporation, on behalf of said corporation.

My commission expires:

_____                          Notary Public, State of Texas
                                          Notary's printed name:

FILED FOR RECORD THE _14_ DAY OF _August_ A.D. 1995 AT _4:38_ P.M.
RECORDED THE _17_ DAY OF _August_ A.D. 1995 AT 2 O'CLOCK P.M.
MARY ATTLESEY, CLERK COUNTY COURT, HOPKINS COUNTY, TEXAS.
BY _____ _Jane Lewis_ , DEPUTY

# APPENDIX

# EXHIBIT F

GIFT DEED
(Drafted Without Title Examination)

Date:       November 18th, 2003

Grantor:    GWENDOLYN BOATMAN, dealing in separate property

Grantor's Mailing Address
(including county):

                    Hopkins County

Grantee:    LETA YORK, a single woman

Grantee's Mailing Address
(including county):

                    Hopkins County

Consideration:

For and in consideration of the love and affection that Grantor has
for Grantee and that the hereinafter described property is intended
as a gift to Grantee;

Property (including any improvements):

All that certain lot, tract or parcel of land, being a part of the
Mansel R. Crisp Survey No. 379, Vol. 46 A-183, located about 1 mile
Northeast of Weaver, Hopkins County, Texas, being the same land
described in patent to Mansel R. Crisp recorded in Book 24, Page
232, of the Deed Records of Hopkins County, Texas, being a part of
the same land described in a Deed of Trust from W. L. Smith and
wife, Donnie Smith, to the Federal Land Bank of Houston, dated
December 12, 1933, recorded in Vol. 44, Page 444 of the Deed of
Trust Records of Hopkins County, Texas;

BEGINNING at a 3/8" iron stake set in the West boundary line of the
said M. R. Crisp Survey for the Southwest corner, being N 0 deg.
03' 25" W a distance of 2106.025 feet from the Southwest corner of
the said Crisp Survey;

THENCE N 0 deg. 03' 25" W a distance of 1510.175 feet to a 3/8"
iron stake set at base of a corner fence post for the Northwest
corner, being in the South boundary line of a County Road;

GIFT DEED

                                                    Page 1

THENCE N 89 deg. 40' 26" E a distance of 3706.60 feet along the South boundary line of a County Road to a P. K. nail set for the Northeast corner;

THENCE S 0 deg. 27' 16" W a distance of 2028.10 feet along the West boundary line of a County Road, being the Southeast corner of a 4 acre tract deeded to Leta Smith York and husband, Henry A. York, by W. L. Smith and wife, Donnie Smith, dated February 25, 1967, recorded in Vol. 305, Page 523 of the Deed Records of Hopkins County, Texas;

THENCE S 89 deg. 53' W a distance of 513 feet to a 3/8" iron stake set for a point of intersection;

THENCE N 81 deg. 05' 30" W a distance of 3214.72 feet to a 3/8" iron stake set in the West boundary line of the said M. R. Crisp Survey for the Southwest corner being the Point of Beginning.

CONTAINING 153.185 acres of land, more or less.

BEING the same land described in a Deed from Lorene Wynn et vir, Paul C. Wynn, to Leta York, dated June 24th, 1985, recorded in Vol. 448, Page 844, Deed Records, Hopkins County, Texas.

AND BEING the same land described in a Deed from Leta York to Gwendolyn Boatman, as her separate property, dated August 10th, 1995, recorded in Vol. 208, Page 155, of the Real Property Records of Hopkins County, Texas.

RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY:

1. Subject to all outstanding Reservations, Restrictions and Rights of Way of record and to all visible and apparent easements.


GRANTOR, GWENDOLYN BOATMAN, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, hereby GRANTS, GIVES and CONVEYS to the Grantee, LETA YORK, a single woman, the Property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and to hold unto Grantee, LETA YORK, her heirs, assigns, executors, administrators and successors, forever.

Grantor, GWENDOLYN BOATMAN, hereby binds herself, her heirs, assigns, executors, administrators and successors, to warrant and forever defend all and singular the property unto Grantee, LETA YORK, her heirs, assigns, executors, administrators and successors against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.



GWENDOLYN BOATMAN

(Acknowledgment)

THE STATE OF TEXAS,
COUNTY OF HOPKINS.

This instrument was acknowledged before me on the 18th day of November, 2003, by GWENDOLYN BOATMAN.

J. R. RAMEY
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 02-28-2005

Notary Public, State of Texas

AFTER RECORDING RETURN TO:

LETA YORK

PREPARED IN THE LAW OFFICE OF:

Ramey & Sheffield
P. O. Drawer 899
Sulphur Springs, Texas 75483

Page 3

# APPENDIX

# EXHIBIT G

VOL     PAGE

0513    0619

## RECISSION OF GIFT DEED

0001

| STATE OF TEXAS | § | |
|---|---|---|
| | | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HOPKINS | § | |

That under date of November 18, 2003, GWENDOLYN BOATMAN executed a document entitled "Gift Deed" to a 153.185 acre tract of land in Hopkins County, naming LETA YORK as the grantee. Such document has not been recorded in the deed records of the County Clerk and has not been delivered to LETA YORK. The said gift deed document was not intended to take effect unless and until the occurrence of certain conditions. Those conditions have not occurred and the purpose for which the gift deed document was intended is no longer present.

Therefore, I, GWENDOLYN BOATMAN, do by these presents, declare the said Gift Deed document to be rescinded. The same is hereby declared to be void and invalid rendering the same of no further force and effect.

Witness my hand this the 31 day of December, 2004.

_Gwendolyn Boatman_
GWENDOLYN BOATMAN

## ACKNOWLEDGMENT

THE STATE OF TEXAS  §

COUNTY OF HOPKINS  §

BEFORE ME, the undersigned authority, on this day personally appeared GWENDOLYN BOATMAN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE on this the 31 day of December, 2004.

_Pat Mowen_
Notary Public, State of Texas

PAT MOWEN
MY COMMISSION EXPIRES
AUGUST 23, 2006

**0001**

VOL 0513    PAGE 0620

FILED FOR RECORD
HOPKINS COUNTY, TEXAS

2005 JAN -3 AM 8: 45

DEBBIE SHIRLEY
COUNTY CLERK

BY _LF_ DEPUTY

Recd by 14 00
Return to Gwendolyn Boatman
C/o Linda Moore
803 Sahara
Greenville Txo
75402

**STATE OF TEXAS**
**COUNTY OF HOPKINS**
I hereby certify that this instrument was filed in
file number sequence on the date and time
stamped hereon by me and was duly
recorded in the volume and page of the
named records of Hopkins County, Texas.
as stamped by me

*Debbie Shirley*

County Clerk, Hopkins County, Texas

RECORDED JAN 0 6 2005

*Holiday Notes ...*

513/619
1/3/05

**MDA**
(888) HELP-MDA